1
2

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS
### WESTERN SECTION

3

4

5

.............................

6

**BLACKSTONE MEDICAL, INC.  .**

.   **No. 08cv30145-map**

7

**v.**                          .

.

8

**OSIRIS THERAPEUTICS, INC. .**

.

9

**v.**                          .

.

10

**NuVASIVE**                .

.............................

11

12

13

**BEFORE THE HONORABLE MICHAEL A. PONSOR,**
**UNITED STATES DISTRICT JUDGE,**
**MOTION HEARING**
**JULY 24, 2008.**

14

15

16

17

18

19

20

**APPEARANCES:**

21

**See page 2.**

22

23

24

25

PDF created with pdfFactory trial version www.pdffactory.com

1    APPEARANCES:

2

3    For the plaintiff by telephone:  Brian Hurst, 2001 Ross
         Ave., Suite 2300, Dallas, TX 75201.

4         J. Brent Alldredge and W. Barton Rankin,
          2300 Trammel Crow Center, 2001 Ross Ave.,
5         Dallas, TX 75201.

6    For the plaintiff in person:  John Pucci and J. Lizette
          Richards, 64 Gothic Street, Suite 4,
7         Northampton, MA 01060

8

9

10   For the defendant Osiris by telephone:  James Dillon, 155
          Seaport Boulevard, Boston, MA 02210-2600.

11        Tami Lyn Azorsky, 1900 K. Street, N.W.,
          Suite 100, Washington, D.C. 2006-1108.
12

13   For the defendant NuVasive by telephone:  Bruce Falby and
          Jason Hannon, 33 Arch Street, 26th Floor,
14        Boston, MA 02110-1447.

15

16

17        Alice Moran, CSR, RPR, RMR
          Official Federal Court Reporter
18        1550 Main Street, Room 536
          Springfield, MA 01103
19   Tel: (413)731-0086  Fax: (413)737-7333
          alice.moran@verizon.net
20

21

22

23

24

25

1              (Court commenced at 2:13.)

2

3          THE COURT:  Good afternoon.  Please be seated.

4          THE CLERK:  This is the case of Blackstone

5   Medical versus Osiris Therapeutics, Civil Action

6   08-30145.

7          THE COURT:  All right.  What I'm going to do

8   first is have counsel introduce themselves.  I am

9   speaking a little louder than I normally do because I'm

10  hoping that our friends who are listening in by telephone

11  will be able to hear what I'm saying, and I'm going to

12  ask the people who are here by telephone to speak up a

13  bit as well because it may be hard for us to hear you in

14  the courtroom.

15      Here in the courtroom with me I have -- well, I'll

16  let counsel introduce themselves here and tell me who

17  they're representing.

18          MR. PUCCI:  John Pucci, Your Honor, for

19  Blackstone Medical.

20          THE COURT:  Okay.

21          MS. RICHARDS:  Lizette Richards also for

22  Blackstone Medical.

23          THE COURT:  And how do you spell your last

24  name?

25          MS. RICHARDS:  It's R-I-C-H-A-R-D-S.

1        THE COURT:  All right.  Were you able to hear

2    that, those of you who are on the phone?

3        MR. DILLON:  No, Your Honor, we were not.  This

4    is James Dillon from Foley Hoag and I could not hear.  I

5    could hear you fine.

6        THE COURT:  Right.  One of the problems that I

7    will tell you all this with my system here is it is hard

8    for people on the other end of the line to hear people in

9    the courtroom.  So I'm going to ask Mr. Pucci to come up

10    a little closer to the telephone and we'll see if we

11    can't manage this a little better with him closer.

12       I understand that I have on the line right now Mr.

13    Dillon from Foley, Hoag, is that correct?

14        MR. DILLON:  That is correct, here for the

15    defendant Osiris Therapeutics.

16        THE COURT:  Okay.

17        MR. DILLON:  And with me on the phone is Tami

18    Azorsky from McKenna Ling & Aldridge in Washington, D.C.

19    There is a motion pro hac vice filed to enter her

20    appearance in this case to which I have said there's no

21    objection.

22        THE COURT:  All right.  Ms. Azorsky, can you

23    spell your last name please?

24        MS. AZORSKY:  Yes, it's A-Z-O-R-S-K-Y.

25        THE COURT:  All right.  Thank you.

PDF created with pdfFactory trial version www.pdffactory.com

1    I also understand that we have Mr. Hurst with us, is

2    that right?

3    MR. HURST:  That's correct, Your Honor, as well

4    my co-counsel here at Baker & McKenzie, Brent Alldredge,

5    A-L-L-D-R-E-D-G-E, and Bart Rankin, R-A-N-K-I-N.

6    THE COURT:  Okay.  And I also understand we

7    have Bruce Falby joining us?

8    MR. FALBY:  Yes, Your Honor, Bruce Falby; F, as

9    in Frank, A-L-B as in boy, Y, DLA Piper in Boston.  I

10    represent NuVasive, Inc., the purchaser under the

11    transaction that you've been asked to enjoin, and with me

12    is Jason Hannon, H-A-N-N-O-N.  He's not with me

13    physically but also on the phone with us.  He's the

14    general counsel of NuVasive and we had planned to attend

15    any live hearing or attending.

16    I had prepared a motion to intervene which I was

17    going to hand up if there was a live hearing.  I could

18    file it electronically if you need me to in order to

19    allow me to speak, but we obviously have an interest in

20    what happens today.

21    THE COURT:  All right.  Thank you.  Yes, you

22    can file that motion electronically.

23    MR. FALBY:  Thank you, Your Honor.

24    THE COURT:  Let me say two things or address

25    two subjects and then hear what counsel have to say.  The

PDF created with pdfFactory trial version www.pdffactory.com

1    two subjects are first how very unhappy I am this

2    afternoon to have to be addressing this issue in this

3    way.  I'm going to expand on that in a moment, and

4    second, what I understand to be the background issues in

5    this case.

6        You won't be surprised to learn if you look at your

7    own professional life that I don't usually sit around at

8    my desk saying, oh, boy, I wish someone would file a

9    motion for temporary restraining order so I would have

10   something to do.

11       My entire day has been disrupted by this motion and

12   I'm not happy about it.  I just received from the

13   defendants a phone-book sized submission about 15 minutes

14   before I came in here.  I've been able to read the

15   memorandum.

16       This problem has been brewing, as far as I can see,

17   since May and I am suddenly having to stop everything,

18   including a lot of fairly important matters, and attempt

19   to digest this stuff on the fly.

20       I also don't particularly like hearing people by

21   telephone.  For one thing, our mechanism is not very good

22   and I'm having to speak about 150 percent louder than I

23   normally speak.  I can't gauge body language, facial

24   expression or get any sense of what the relationship is

25   amongst the parties because you're in various places in

PDF created with pdfFactory trial version www.pdffactory.com

1    the country.

2         So at this point I'm in a plague on both your houses

3    mood and pretty much inclined to put this all over until

4    Monday and make everybody fly here and appear before me

5    in person if this is so darn gone important that I have

6    to stop what I'm doing and rule on it.

7         So I've now vented and hopefully I'll be able to

8    relax and listen to what your arguments are, but as far

9    as I'm concerned this is a heck of a way to run a

10   railroad.

11        Of course, I know I will be hearing from each party

12   in complete agreement with me and then saying, yes, but

13   it's the other guy's fault that things are such a mess.

14   That's not going to help me and I'm not particularly

15   interested in that either.  Here we are.

16        Now as I understand it, this is the background of

17   the case, and I'm moving on to Roman Numeral II, the

18   plaintiff is a distributor of a product which I'm going

19   to call Trinity which belongs to the defendant Osiris.

20        Osiris is in the process of selling this particular

21   asset to a third party named NuVasive.  Blackstone has

22   filed a motion for preliminary injunction in an attempt

23   to block the sale.

24        The sale is scheduled to take place today or

25   tomorrow and the plaintiff takes the position that

PDF created with pdfFactory trial version www.pdffactory.com

1   they're entitled to an immediate injunction from me

2   barring the sale.

3       I have had an opportunity to read the submissions

4   from the plaintiff and I've had an opportunity to read

5   the submission from the defendant, which just hit my desk

6   a few minutes ago.  And when I say read the submission

7   from the defendant, I mean the defendant's ten-page

8   memorandum.  There are a good deal of attachments which I

9   have not had a chance to look at.

10      I guess I would like to begin by hearing from either

11   Mr. Pucci or Mr. Hurst as to why we're here, and the

12   reason that I ask that and you won't be surprised I

13   suppose to hear me ask that because the point is made in

14   the most recent submission from the defendant, paragraph

15   11.2 of the operative agreement seems to contemplate

16   exactly what's happening here.

17      The provision says that "Osiris may transfer this

18   agreement without prior written consent of distributor to

19   an affiliate or in connection with a merger or sale of

20   all, or substantially all, of the stock or assets of

21   Osiris relating to this agreement."

22      Now defendant takes the position, in short, that

23   what they propose to do is to transfer without prior

24   written consent of the distributor all of the assets

25   relating to this agreement, exactly what is contemplated

PDF created with pdfFactory trial version www.pdffactory.com

1    as permitted by the distributorship agreement, and I

2    don't understand why I'm here to try to prevent the

3    defendant from doing what the distributor agreement seems

4    to say that they can do.

5         I also have representations from the defendant that

6    it does not intend to do anything to interfere with

7    Blackstone's rights under the agreement at least not

8    prior to December 31, 2008, and I have a representation

9    from NuVasive that it intends to respect all of

10   plaintiff's rights as distributor through December 31st

11   of 2008.

12        I also have a representation that Osiris does not

13   have and, to the extent that it might have, has not

14   disclosed any confidential information relating to

15   Blackstone.

16        So I guess I'm wondering what the problem is and why

17   I'm being asked to step in in a situation where at least

18   my cursory reading of the agreement between the parties

19   suggests in Article 11, Section 11.2 that this is exactly

20   the type of transaction that their agreement recognizes

21   and permits.

22        So, Mr. Hurst, could you address at least that

23   subject first or Mr. Pucci, whichever one of you would

24   like to speak.  Just for the record, Mr. Pucci has just

25   gestured toward the telephone, Mr. Hurst, so I think

PDF created with pdfFactory trial version www.pdffactory.com

1   you've got the laboring oar here.  Perhaps you can

2   enlighten me on that, and then you can add whatever I may

3   be overlooking that you'd like to bring to my attention.

4        MR. HURST:  I'll be glad to do so, Your Honor.

5   Before addressing Section 11.2, let me just say that

6   while I've not had a chance to read the defendant's

7   pleadings, none of the representations that Your Honor

8   recited have been made to Blackstone over the last two

9   months during which our chief executive officer has been

10   in frequent communication with Mr. Mills of Osiris, Mr.

11   Hannon of NuVasive, Mr. Lukianov, the CEO of NuVasive, in

12   an attempt to understand how Osiris could possibly sell

13   this business to a competitor of ours and honor the

14   various covenants in our distribution agreement.

15        So there has very much been an effort on our part to

16   gain this understanding.  The only thing we've been told

17   clearly by Osiris is we are going to close as soon as

18   possible after our July 24th shareholder meeting,

19   notwithstanding the fact that our agreement with NuVasive

20   doesn't require us to close until September 8th.  That

21   is why we are here and unfortunately ruining your day,

22   which I apologize.

23        As to Section 11.2 you are correct.  I understand

24   that facially that section does permit Osiris to assign

25   its distribution agreement in connection with the sale of

PDF created with pdfFactory trial version www.pdffactory.com

1    the Osteocel business.  That, however, is only one

2    provision of the agreement.

3        Section 2.1 of the agreement under the heading

4    appointment of distributor, second sentence from the

5    bottom, says that "Osiris shall not enter into any

6    agreement with any rights to a third party that would

7    conflict with or violate the terms of this agreement."

8        THE COURT:  Right.  I did read that.

9        MR. HURST:  The proposed sale to NuVasive, Your

10   Honor, conflicts with this agreement in two ways

11   certainly and in a third way possibly.  The two certain

12   ways it conflicts with this agreement is it destroys our

13   right to exclusivity not only through the remainder of

14   2008 but into renewal terms.

15       Number two, Osiris has already told us in writing --

16   this is in the July 7th letter which is attached to the

17   declaration of Michael Finegan -- that they will not

18   honor our right to renew beyond December 31, 2008.

19       The third way that this sale to NuVasive breaches

20   the agreement is the risk of the disclosure of

21   confidential information.

22       Now I won't sit here and tell the court, nor have we

23   represented to the court, that we know for a fact

24   confidential information has been disclosed.  The

25   assurance that was made to the court has never been made

PDF created with pdfFactory trial version www.pdffactory.com

1   to us and we believe that at a minimum additional time is

2   required to allow us to explore that.

3           THE COURT:  Let me just take those three points

4   one by one.

5       You say, first of all, that this sale would destroy

6   your rights to exclusivity not only through the end of

7   December 31, 2008 but during any renewal period.  Let's

8   just focus now on through December 31, 2008.

9       If you had a representation from NuVasive that you

10  would remain -- all of your rights, to the extent that

11  they exist as an exclusive distributor, would be

12  respected through December 31, 2008, and that's the

13  representation that's been made to me by the defendants,

14  then that would not be any difficulty for your client.

15      I'm going to hear from counsel for defendant here in

16  a moment, but at least, unless I've misread their

17  memorandum as I've gone through it hastily here, their

18  position is we know you have this distributorship

19  agreement.  We are giving it to NuVasive and both

20  NuVasive and Osiris have said it's yours.  We're going to

21  comply with it 100 percent.  There's not going to be any

22  change through December 2008.

23      So I've kind of got a swearing match right now, but

24  I hear that you haven't heard those representations you

25  say, but from where I'm sitting, you know, I suppose the

1    simplest thing for me to do is to say that I'm going to

2    deny the motion for preliminary relief on condition that

3    both the defendant Osiris and NuVasive upon pain of

4    sanctions fully respect the distributorship agreement

5    through December 31, 2008.

6         Would an order along those lines -- well, tuck into

7    the back of your head the question whether an order along

8    those lines would solve your problem.

9         The second issue having to do with the right to

10   renew, there you do have a dog fight.  I think it's

11   perfectly clear that NuVasive intends to terminate your

12   agreement after December 31, 2008.  I think they feel

13   that they have a right to do it.

14        They say that -- I don't know if you've had a chance

15   to read this memo yet, but they say that the performance

16   objectives which were supposed to be set forth in Exhibit

17   D which would have provided the basis for renewal were

18   never in fact created.

19        There is no Exhibit D, and all that the agreement in

20   its present form contains is an agreement to possibly

21   agree on a renewal and that's not binding and they don't

22   intend to -- they don't intend to renew you.  I think

23   that's a pretty clear inference from the current

24   situation.

25        What do you say about that?  Are you entitled to be

PDF created with pdfFactory trial version www.pdffactory.com

1    renewed and is some order from me today going to protect

2    that right to renewal?  Those are my two questions right

3    now.

4         MR. HURST:  Your Honor, I think the most

5    important thing that an order from you today can do is

6    protect an arbitrator's right to decide if we have a

7    right to renew with Osiris.  We did not contract with

8    NuVasive.  We contracted with Osiris, the manufacturer of

9    this product.

10        The right to arbitration that we contracted for will

11   not be effective or a meaningful right if the toothpaste

12   gets out of the tube and this deal goes forward and

13   closes.

14        Your Honor, of course, you put your finger on the

15   reason why the type of order you described a moment ago,

16   while helpful, does not get us all the way there because

17   there's five or six months left in 2008 and yet we have a

18   right to renew this agreement and continue to be the

19   exclusive distributor for years beyond that.

20        Your Honor is correct, I mean with our competitor

21   sitting in the driver's seat, the landscape has simply

22   changed and there is -- we just don't believe that an

23   arbitrator will be able to fashion effective relief with

24   NuVasive in the shoes of Osiris.

25        We think Osiris has entered into this agreement and

PDF created with pdfFactory trial version www.pdffactory.com

1   while it may pain them to postpone their closing with

2   NuVasive, it is their obligation to honor the agreement

3   and honor the dispute resolution proceedings.

4        THE COURT:  What is the significance in your

5   view of paragraph 11.2 then?  Under your argument

6   wouldn't subparagraph A of paragraph 11.2 lose all its

7   meaning?

8      It says, again I hate to repeat it but I hope I'm

9   reading it correctly, it says "Osiris may transfer this

10  agreement without prior written consent of distributor to

11  an affiliate or in connection with a merger or a sale of

12  all, or substantially all, of the stock or assets of

13  Osiris relating to this agreement."

14     Now the defendant says that is precisely what's

15  happening.  This is a sale of all or substantially all of

16  the assets of Osiris relating to this agreement pure and

17  simple.

18     We know at least, unless things move faster than

19  typically, if I enter a preliminary order and I say go to

20  arbitration, we can kiss this goodbye for at least a year

21  or six months while you go through arbitration and pick

22  an arbitrator.  I imagine there may be a possibility of

23  some kind of judicial review by the unhappy party of the

24  arbitration.

25     Unless it's a very speedy arbitration, this whole

PDF created with pdfFactory trial version www.pdffactory.com

1   thing slides into the icebox for quite awhile and I think

2   that's something that I have to consider in weighing the

3   balance of harms here.  But tell me what does that mean

4   if it doesn't cover this situation?  What does 11.2

5   Subsection A mean if it doesn't cover this situation?

6          MR. HURST:  What it means, Your Honor, is

7   there's a whole universe of other biologic companies out

8   there that are not out there selling spinal surgery

9   products to surgeons in hospitals the way that Blackstone

10   and NuVasive are in head-to-head competition.

11      There are a whole universe of assignees to whom

12   Osiris could have assigned this agreement without any

13   objection on our part.

14      While 11.2 says what it says, 2.1 also says what it

15   says and there's clearly tension between them and we are

16   right at the point of that tension, and an assignment to

17   NuVasive simply cannot take place without breaching the

18   distribution agreement.

19      Osiris agreed it would not enter into any agreement

20   or grant any rights to a third party re: NuVasive that

21   would conflict with or violate the terms of the

22   distribution agreement.

23          THE COURT:  Okay.

24          MR. HURST:  You've got to read it.  You've got

25   to -- I'm not saying you have to do anything.

PDF created with pdfFactory trial version www.pdffactory.com

1    THE COURT:  No, no, I know what you mean.  The

2  two have to be read together.

3    Let me hear from whoever would like to speak up now

4  on behalf of the defendant here, whether it's Mr. Dillon

5  or Ms. Azorsky or whichever one of you would like to jump

6  in here.

7    MS. AZORSKY:  This is Ms. Azorsky.  Thank you,

8  Your Honor.

9    I think that when you addressed this at the

10  beginning you are exactly right, and I think if any order

11  should enter, it should be exactly the order that you

12  described.

13    There 11.2(a) allows a transfer of this agreement

14  without even disclosure or without even prior written

15  consent of the distributor and that it is exactly what's

16  happening here.

17    It is being transferred and the reason that

18  Paragraph 2.1 doesn't conflict with that is because even

19  with that transfer, Blackstone will continue to get

20  everything it's entitled to get under this agreement.

21    I know you haven't had an opportunity to look at the

22  declarations yet but we've summarized them in the

23  memorandum and Osiris has stated that it intends to honor

24  this agreement.  NuVasive has stated that it intends to

25  honor this agreement.

1    We have explained in Mr. Barns' declaration that the

2    whole double counting concept that was put out there

3    wouldn't be possible to honor the agreement if we

4    transferred the business to NuVasive simply isn't true.

5    NuVasive is committed to continuing to give

6    Blackstone 80 percent of its product and the exclusivity

7    to which it's entitled through 2008.

8    There is a dispute about whether this agreement can

9    be renewed at Blackstone's unilateral choice.  We believe

10   that they don't have a substantial likelihood of success

11   on that argument.

12   Their argument is that this would continue for as

13   long as they wanted it to continue and we would be their

14   hostage until they decided they wanted out of this or

15   developed some other product, and that's not what the

16   agreement says.  There are distinctive words.  There is

17   the use of the word shall and the use of the word may.

18   The only real dispute here is the extension.  There

19   is time to resolve that issue before the end of the year.

20   There has been no breach of the agreement.  There is no

21   anticipatory breach because everybody who's out there has

22   said we have no intention to breach.  We intend to honor

23   this agreement.

24   THE COURT:  So if I might summarize what you're

25   saying, the transaction that is here on the wings is one

PDF created with pdfFactory trial version www.pdffactory.com

1   in which NuVasive will simply step into your client's

2   shoes and take over the obligations in the agreement and

3   has every intention of fully complying with that

4   agreement?

5          MS. AZORSKY:  That is correct, Your Honor, and

6   if there is any dispute in the future, then NuVasive will

7   have to honor whatever the entity that resolves that

8   dispute says they have to do.  There's just nothing in

9   this agreement that says the distributor can stop Osiris

10   from selling a whole business line.

11          THE COURT:  Let me hear from Mr. Falby or Mr.

12   Hannon with regard to NuVasive.  I have the same question

13   with regard to NuVasive's intentions if they do -- if

14   this transaction goes forward.  Mr. Falby.

15          MR. FALBY:  Yes, Your Honor.  You've summarized

16   it correctly that NuVasive will honor every obligation

17   under the agreement.

18      My understanding of the primary complaint that

19   Blackstone has is a compliant that my client intends

20   itself to begin selling the product and distributing

21   itself and competing as a distributor and destroying the

22   exclusivity that belongs to Blackstone.  That is not the

23   case.

24      NuVasive is not -- NuVasive is not going to be

25   distributing the product itself through the end of 2008.

PDF created with pdfFactory trial version www.pdffactory.com

1   As Mr. Hannon said in his affidavit today that's been

2   filed with Your Honor, NuVasive will perform under the

3   agreement all of its obligations assuming performance by

4   Blackstone of its obligation.

5       It will perform entirely in accordance with the

6   agreement including the exclusivity provision through the

7   end of 2008 and this is not new news.  This was announced

8   in a press release that Mr. Hannon attaches to his

9   affidavit that was issued in May when the transaction was

10  announced.

11      So the answer to your question is, yes, we will

12  comply and we agree wholeheartedly with Osiris that there

13  has been no breach.  There's no anticipatory breach, and

14  there is no conflict between 11.2 and 2.1 because nothing

15  that's happening here in any way affects or impinges or

16  infringes any right that Blackstone has under this

17  distribution agreement.

18      THE COURT:  And I take it you would agree with

19  Attorney Azorsky that there may be a disagreement that

20  the parties have about what happens after December 31,

21  2008 when there is some type of consideration of renewal

22  that's bound to come up.

23      MR. FALBY:  Yes, we absolutely agree that

24  there's a distribute about that and as to that there's

25  obviously no exigency whatever because there's time to

PDF created with pdfFactory trial version www.pdffactory.com

1   decide that in arbitration where it belongs before the

2   end of the year.

3          THE COURT:  All right.

4          MR. FALBY:  There's certainly no present

5   dispute that needs resolution or that presents an issue

6   or any emergency at this moment that could possibly

7   support the issuance of injunctive relief.

8          THE COURT:  All right.  Mr. Hurst, you've heard

9   the representations of Attorney Azorsky and Attorney

10  Falby.  Do you have anything that you'd like to add?

11         MR. HURST:  Two things, Your Honor.  Although

12  we've asked the question many times, this is the first, I

13  hope, binding representation that our distribution

14  agreement was going to be assigned to NuVasive.

15      When that question was put to NuVasive or Osiris

16  before, it was met, more or less, with a shrug of the

17  shoulders.  We don't know; we'll have to wait and see.

18      Now Your Honor has already identified the logical

19  inconsistency of NuVasive taking an assignment of this

20  agreement and renewing it beyond 2008.  Clearly they are

21  setting themselves up to buy something that does not have

22  the value they've assigned to it in their agreement, but

23  if that is their representation that they're willing to

24  abide with the decision that the agreement may be renewed

25  beyond 2008, then that's great.

PDF created with pdfFactory trial version www.pdffactory.com

1   Now the other thing I would point out about that is

2   our agreement to arbitrate is with Osiris.  It is not

3   until this distribution agreement is assigned to NuVasive

4   that we have a right to arbitrate with them, and I would

5   like to know if they are going to represent to the court

6   that they will honor that arbitration agreement.

7   THE COURT:  Well, I'm not going to put them in

8   a position of where they have to respond to that.  They

9   can certainly respond if they want to but I don't need

10  them to do that in order to put myself in a position

11  where I can rule.

12  I do want to correct one thing because we may have

13  heard the representations of Osiris and NuVasive

14  differently.  I think that the position of Osiris and

15  NuVasive, perhaps I'm inferring something here, but I

16  think it's a pretty clear inference that they take the

17  position that they have the right to terminate the

18  agreement as of December 31, 2008.

19  I think they think that the renewal provisions of

20  the agreement are precatory or descriptive of something

21  that the parties might voluntarily enter into, but I

22  think they also take the position that the provisions do

23  not bind them to renew.

24  I don't know who's right on that and I don't think I

25  have to decide that right now.  I don't know just how

PDF created with pdfFactory trial version www.pdffactory.com

1   binding the renewal provisions of the agreement are, and

2   I do not know whether your client will have a right to

3   renew the agreement.

4       I think I can say that I'm probably not telling you

5   anything when I think we can expect that both Osiris and

6   NuVasive will take the position that they are not

7   obligated to renew and they were not making any

8   representation of any understanding that they had that

9   they were obligated to renew.

10      It's a funny world.  You never know what's going to

11  happen and maybe everyone will get together and renewal

12  will occur.  We don't know, but I do know that there's

13  nothing here before me right now that requires immediate

14  action from the court.

15      So based upon the representations that I have just

16  heard, I'm going to deny plaintiff's motion for temporary

17  relief.  It is on condition that if the sale goes

18  forward, the purchaser will comply fully with the

19  provisions of the applicable agreement through the end of

20  December 2008, and I understand that that is fully the

21  intention both of the seller Osiris here and of the third

22  party NuVasive.

23      Based upon that I do not find that there is either

24  any showing of likelihood of success on the merits or of

25  irreparable harm.  Of course, the First Circuit has made

PDF created with pdfFactory trial version www.pdffactory.com

1   it clear many times that the decision at this stage is

2   merely an assessment of probabilities.  That does not

3   mean that as this case goes forward you won't be able to

4   show that there was some actionable conduct and that

5   you're entitled to damages.

6       All I'm finding is that there is no need for any

7   immediate action by the court and for the reasons I just

8   stated I'm going to decline to take any action and deny

9   your motion.

10      So unless anyone has anything further to say, I'm

11  prepared to recess right now.  Okay.

12          MR. FALBY:  Your Honor, this is Bruce Falby

13  and I just want to make one point clear.  I said it

14  before that we intend fully to comply.  Obviously if

15  Blackstone begins not to comply by not taking the product

16  or by not paying for it, we will act appropriately in the

17  exercise of what rights that gives us under the agreement

18  or what rights we have at law, but assuming full

19  performance by them, we intend to fully perform and

20  that's what Mr. Hannon's declaration says.

21          THE COURT:  Right.  Well, I don't think that

22  the plaintiffs are suggesting that anything about this

23  proceeding would give them a license to ignore any

24  provisions of the agreement.  I don't hear any

25  suggestions that they have any such intention.

PDF created with pdfFactory trial version www.pdffactory.com

1    The agreement is what the agreement is and it will

2  continue.  Based upon what I've heard I understand that

3  it will continue through at least December of 2008 and

4  the plaintiff will suffer no immediate prejudice as a

5  result of that, and all the parties will have a full

6  opportunity to litigate the question of the extension as

7  needed.

8    We don't even know yet whether there will be a

9  renewal.  I think it's the position of NuVasive that

10  there probably won't be but that decision still lies in

11  the future.  If there's nothing further then --

12         MR. PUCCI:  Nothing.

13         THE COURT:  -- the court will be in recess.

14  Thank you all very much.  Sorry for my grouchy comments

15  at the beginning of the hearing.  I appreciate your

16  representations and that's where we will go.  Thank you

17  very much.  Court's in recess.

18

19         (Court recessed at 2:47.)

20

21

22

23

24

25

1              **C E R T I F I C A T E**

2

3

4         **I, Alice Moran, Official Federal Court Reporter for**

5    **the United States District Court for the District of**

6    **Massachusetts, do hereby certify that the foregoing**

7    **transcript is a true and accurate transcription of my**

8    **stenotype notes taken in the aforementioned matter to the**

9    **best of my skill and ability.**

10

11

12

13              **/s/ Alice Moran**

14         **Alice Moran, CSR, RPR, RMR**

15         **Official Federal Court Reporter**

16         **1550 Main Street, Room 536**

17         **Springfield, MA 01103**

18              **(413) 731-0086**

19         **alice.moran@verizon.net**

20

21

22

23

24

25