UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION

| | |
|---|---|
| BLACKSTONE MEDICAL, INC., )<br>　　Plaintiff, )<br>　 )<br>v. )<br>　 )<br>OSIRIS THERAPEUTICS, INC., )<br>　　Defendant. ) | Cause No. 08-CV-30145 MAP |

## OSIRIS THERAPEUTICS, INC.'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM

Defendant Osiris Therapeutics, Inc. ("Osiris") respectfully files this memorandum in support of its motion to dismiss the Complaint filed by Blackstone Medical, Inc. ("Blackstone") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

### INTRODUCTION

Blackstone's suit is not properly before this Court.[1] Blackstone filed its Original Complaint ("Complaint") as a backdrop to its concurrently filed Motion for Temporary Restraining Order ("TRO") and Preliminary Injunction, which this Court denied on July 24, 2008, allowing Osiris to proceed to close the transaction selling the Osteocel business

---

[1] Counsel for Blackstone refused a request from Osiris's counsel that they voluntarily dismiss the Complaint.

line and associated Distribution and Supply Agreement ("Distribution Agreement")[2] with Blackstone. (*See* Press Release attached as Exhibit 2.) Rather than assert a defined cause of action in its Complaint, Blackstone simply asserted facts to support its request for temporary injunctive relief. Now that such relief has been denied and the Distribution Agreement has been assigned to the purchaser, this Court should dismiss the Complaint and require Blackstone to seek resolution of its claims in accordance with Article 7 of its Distribution Agreement. Under the dispute resolution procedures set forth in that agreement, Blackstone must first undergo good faith negotiations with Osiris, and upon failure of such negotiations, submit its claims to binding arbitration before the American Arbitration Association ("AAA"). Accordingly, this Court should dismiss the Blackstone's Complaint for lack of subject matter jurisdiction. Moreover, because the Distribution Agreement has now been assigned to NuVasive, the Complaint against Osiris also should be dismissed for failure to state a claim upon which relief can be granted.

---

[2] Messrs. Tom Brewer and Michael Finnegan attached true and correct copies of this agreement as Exhibit 1 to their Declarations filed in support of Blackstone's Motion for Temporary Restraining Order and Preliminary Injunction. Another true and correct copy is attached hereto as Exhibit 1 for ease of the Court.

## ARGUMENT

I. **THIS COURT SHOULD DISMISS BLACKSTONE'S CASE BECAUSE ANY REMAINING ISSUES ARE SUBJECT TO THE DISPUTE RESOLUTION PROCEDURES SET FORTH IN ARTICLE 7 OF THE DISTRIBUTION AGREEMENT AND, THUS, THIS COURT LACKS SUBJECT MATTER JURISDICTION**

A federal court may dismiss a complaint if the dispute is subject to an arbitration agreement and "all of the issues before the court are arbitrable." *Bercovitch v. Baldwin School, Inc.*, 133 F.3d 141, 156 n. 21 (1st Cir. 1998). Accordingly, this Court should dismiss Blackstone's Complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure because any issues remaining now that Blackstone's request for temporary injunctive relief has been denied are subject to the dispute resolution procedures set forth in Article 7 of the Distribution Agreement. Indeed, the only real dispute at this juncture is the meaning of the renewal provision in the Distribution Agreement.

Under that agreement, the parties must first "attempt in good faith to negotiate a solution to their differences" and then, upon failure of those negotiations, escalate the matter to their presidents for resolution. (*See* Article 7.1 of Distribution Agreement). If after thirty days of negotiation no resolution is reached, the parties must resolve their issues in binding AAA arbitration. (*See* Article 7.2 of Distribution Agreement). The only exception allowing a party to seek relief from a "court of competent jurisdiction" is a party's request for "any interim or provisional equitable relief necessary to protect the rights or property of such Party without the necessity of proving actual damages...." (*See*

Article 7.3 of Distribution Agreement).[3] Blackstone's request for temporary injunctive relief was denied; it must now seek any further resolution of its claims under the agreed upon dispute resolution procedures.

Article 7 of the Distribution Agreement is valid and enforceable by this Court under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Blackstone's claims fall squarely within the scope of its agreement with Osiris to ultimately pursue arbitration should negotiations between the parties fail. "Federal policy ... overwhelmingly favors arbitration." *Amgen, Inc. v. F. Hoffman-LaRoche Ltd.*, 456 F. Supp. 2d 267, 284 (D.Mass. 2006) (*citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 24-25 (1983)). Under the FAA, written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA also requires federal courts to stay a suit in which any issue is subject to arbitration. 9 U.S.C. § 3. Moreover, this Court has interpreted the FAA as allowing federal courts to "go beyond a stay ... and dismiss the proceeding 'when all of the issues before the court are arbitrable.'" *Spencer Furniture, Inc. v. Media Arts Group, Inc.*, 349 F. Supp. 2d 49, 51 (D.Mass. 2003) (*quoting Bercovitch*, 133 F.3d at

---

[3] In addition, the Distribution Agreement allows either party to "seek temporary and permanent injunctive relief" to restrain the other party from disclosing confidential information. (*See* Article 8.4 of Distribution Agreement). Because Blackstone was denied temporary injunctive relief and Osiris has already assigned the Distribution Agreement, the issue of whether Blackstone may receive a *permanent injunction* to prevent the transfer of confidential information is moot.

156 n.21.) Whether issues are subject to arbitration "is a matter of the parties' contractual intent." *Spencer Furniture*, 349 F. Supp. 2d at 51.

Blackstone has not contested the contractual validity of Article 7 of the Distribution Agreement. In fact, Blackstone frequently mentions the validity of its duties to negotiate and arbitrate in its own Complaint. (*See* Complaint ¶¶ 2, 13-14.) In its prayer for relief, Blackstone only explicitly seeks "a temporary restraining order and injunction preserving the status quo pending arbitration of Blackstone's claims in accordance with the Distribution Agreement's dispute resolution provisions and prohibiting Osiris from closing on its transaction...." (*See* Complaint ¶ 35.) This Court denied Blackstone's concurrently filed Motion for Temporary Restraining Order and Preliminary Injunction on July 24, 2008. The sale Blackstone sought to enjoin closed the same day. (*See* Exhibit 2.) Because the remedy of temporary equitable relief is no longer available to Blackstone, it must now pursue its claims in accordance with Article 7 of the Distribution Agreement. Any possible issues remaining in this case, such as whether Osiris actually or anticipatorily breached the Distribution Agreement, is subject to those dispute resolution procedures. Accordingly, this Court should dismiss Blackstone's Complaint and require the parties to solve the claims raised by Blackstone through the contractual procedures set by the parties.

II. **THIS COURT SHOULD DISMISS BLACKSTONE'S CASE BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

In addition to the fact that any remaining claims in Blackstone's Complaint are subject to Article 7 of the Distribution Agreement, this Court should also dismiss

Blackstone's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Blackstone has failed to state a claim upon which relief can be granted. Courts may dismiss a claim under Rule 12(b)(6) if the plaintiff "can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Farley v. Shaw's Supermarkets, Inc.*, 497 F. Supp. 2d 23, 25 (D.Mass. 2007) (citations omitted). When assessing whether to grant a motion under Rule 12(b)(6), "the court may consider only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint, and matters of which judicial notice may be taken." *Nollet v. Justices of Trial Court of Com. of Mass*, 83 F. Supp.2d 204, 208 (D.Mass. 2000).

Blackstone's Complaint should be dismissed because it only alleges facts to support its Motion for TRO and Preliminary Injunction rather than to support a substantive cause of action recognized by Delaware law. The closest Blackstone comes to stating a cause of action is its claim that "Osiris's proposed sale of the Osteocel product line to NuVasive necessarily and anticipatory breaches the Distribution Agreement...." (*See* Complaint ¶ 20). In support of these claims, Blackstone alleged (1) that the Asset Purchase Agreement ("APA") entered into between Osiris and NuVasive, Inc. ("NuVasive") would result in a violation of Blackstone's exclusive distribution rights throughout 2008, as well as lead to Osiris's failure to meet its supply duties to Blackstone; (2) that Osiris and NuVasive have informed Blackstone that they would not renew the Distribution Agreement for 2009; and (3) that Osiris might transfer Blackstone's confidential information to NuVasive as a result of the sale. (*See* Complaint ¶¶ 20-25).

Blackstone's factual allegations do not state a claim upon which relief can be granted. To state a claim for breach of contract under Delaware law, a plaintiff must show three things: (1) a valid contract existed, (2) the defendant breached a duty under the contract, and (3) the plaintiff suffered damage resulting from the defendant's breach. *See Patterson-Woods & Assocs., LLC v. Realty Enters., LLC*, No. 05C-01-224-JOH, 2008 WL 2231511, at *4 (Del. Super Ct. May 27, 2008). Although the Distribution Agreement is clearly a valid contract, nothing in the pleadings or attached to the pleadings alleges actual breach or damages. If anything, Blackstone's factual allegations only support its concerns that Osiris might breach its duties in the future and that Blackstone might be harmed in the future. Because Blackstone failed to allege any actual breach of contract or damages resulting from such a breach, Blackstone's claim for breach of contract should be dismissed.

Likewise, Blackstone has failed to adequately allege anticipatory breach of contract. Delaware recognizes an immediate cause of action for breach resulting from anticipatory repudiation of a contract, but only if a party makes an "unequivocal statement" that it would not perform its promise regarding a material provision of the contract. *Brasby v. Morris*, No. C.A. 05C-10-022-RFS, 2007 WL 949485, at *4 (Del. Super. Ct. Nov. 29, 2007) (citation omitted). Importantly, "[a]n expression of doubt alone as to one's ability to tender performance on time is not enough to amount to repudiation." *Id. See also* Williston on Contracts § 63:30 ("A contract is totally breached and an anticipatory repudiation occurs when the promisor without justification and before he has committed a breach, makes a positive statement to the promisee

indicating that he will not or cannot substantially perform his contractual duties.") (*quoting Gold Mining & Water Co. v. Swinerton*, 142 P.2d 22 (Cal. 1943)).

Osiris has not anticipatorily breached the Distribution Agreement. On the contrary, Osiris has confirmed that it intends to honor it. (*See* Declaration of Lou Barnes ("Barnes Decl.") ¶¶ 5-7.)[4] Likewise, NuVasive has confirmed that it intends to honor the Distribution Agreement through the end of its term, December 31, 2008. (*See* Declaration of Jason Hannon ("Hannon Decl.") ¶ 2.)[5] Contrary to Blackstone's assertions, Osiris and NuVasive will continue to provide eighty percent (80%) of the Osteocel that is produced during the remainder to 2008, thus meeting the contractual duties set forth in the Distribution Agreement. (*See* Barnes Decl. ¶¶ 6-7.) Moreover, since the Distribution Agreement has now been assigned, any claim of breach would not be against Osiris.

As discussed in further detail in Osiris's Memorandum in Opposition to Blackstone's Motion for TRO and Preliminary Injunction, the only dispute among the companies is over the issue of renewal of the Distribution Agreement after the end of 2008. Although Blackstone asserts otherwise, a close reading of the renewal provision of the Distribution Agreement demonstrates that Blackstone has no contractual right to renew the agreement for successive years. The renewal provision provides:

---

[4] The Declaration of Lou Barnes is attached to Osiris's Memorandum in Opposition to Blackstone's Motion for TRO and Preliminary Injunction as Exhibit B.

[5] The Declaration of Jason Hannon is attached to Osiris's Memorandum in Opposition to Blackstone's Motion for TRO and Preliminary Injunction as Exhibit C.

> This Agreement **shall** begin on the Effective Date and **shall** continue until December 31, 2008 unless terminated earlier in accordance with this Article 6 (the "Initial Term"). The Agreement **may** be renewed after the Initial Term for one (1) year periods upon Blackstone achieving the performance objectives set forth on Exhibit D (each a "Renewal Term," and collectively with the Initial Term, the "Term").

(*See* Article 6.1 of Distribution Agreement) (emphasis added.) The plain language of this provision clearly allows the parties to enter into a bilateral agreement to renew the Distribution Agreement after December 31, 2008, but only if Blackstone achieved the "performance objectives set forth on Exhibit D." Because Exhibit D was never created (*See* Distribution Agreement), and the essential terms of the renewed contract, such as price and quantity, were omitted and left for future agreement of the parties, the renewal provision is an unenforceable "agreement to agree." *See* Williston on Contracts § 4.29. The failure to agree on terms for Exhibit D renders essential elements of the renewal provision fatally undefined and ambiguous. *See Pharmathene, Inc. v. SIGA Technologies, Inc.*, No. 2627-VCP, 2008 WL 151855, at *13 (Del. Ch. Jan. 16, 2008); *see also Welsh v. Heritage Homes of DelaWarr, Inc.*, No. 1901-VCN, 2008 WL 442549, at *9 (Del. Ch. Feb. 19, 2008) ("Delaware law requires that, 'to be enforceable, a contract to enter into a future contract must specify all its material and essential terms, and leave none to be agreed upon as the result of future negotiations....'") (citation and internal quotation marks omitted).

Further, Blackstone's own admissions demonstrate that the intent of the parties was for the Distribution Agreement to expire on December 31, 2008, and that Blackstone would have no unilateral right to enforce the renewal provision. Indeed, Blackstone

informed financial analysts that the Agreement would terminate on December 31, 2008, and that Blackstone was preparing contingency plans. (*See* Barnes Decl. ¶¶ 8-9 and Exs. 1 and 2 thereto.) Moreover, Blackstone's parent corporation, Orthofix, publicly stated that the Distribution Agreement expired at the end of 2008 in a Securities and Exchange Commission filing in December 2007. (*See* Declaration of Allix J. Magaziner ("Magaziner Decl.") ¶ 2 and Ex. 1 thereto.)[6] Such statements contradict Blackstone's assertion that it has a unilateral right to renew the Distribution Agreement beyond December 31, 2008.

In any event, if Blackstone desires to pursue that claim, it must be pursued in arbitration and it must be pursued against NuVasive. This Court does not have subject matter jurisdiction over the dispute and Osiris no longer has the obligation or ability to resolve the dispute.

## CONCLUSION

Blackstone's Complaint was a backdrop to its concurrently filed Motion for Temporary Restraining Order and Preliminary Injunction, which this Court denied on July 24, 2008. Any remaining or future claims Blackstone may have under the Distribution Agreement are required to be arbitrated. Having failed in its attempt to receive "interim or provisional equitable relief," Blackstone must now follow the dispute resolution procedures of Article 7 of the Distribution Agreement. This procedure may ultimately require Blackstone to seek binding AAA arbitration for the resolution of any

---

[6] The Declaration of Allix J. Magaziner is attached to Osiris's Memorandum in
*(footnote continued on next page)*

remaining controversy or claims "arising out of or relating to" the Distribution Agreement. (*See* Distribution Agreement ¶ 7.2.) Accordingly, this Court does not have subject matter jurisdiction over any remaining claims. In addition, Blackstone has failed to state a cause of action under Delaware law for which this Court can grant relief. This case should therefore be dismissed.

By its attorneys,

/s/ *Tami Lyn Azorsky*
Tami Lyn Azorsky (admitted *pro hac vice*)
McKenna Long & Aldridge LLP
1900 K Street, N.W., Suite 100
Washington, DC  20006
(202) 496-7573

James J. Dillon (BBO No. 124660)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02111 - 2600
(617) 832 - 1109

---

Opposition to Blackstone's Motion for TRO and Preliminary Injunction as Exhibit D.

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of this document, which was filed via the Court's ECF system, will be sent electronically by the ECF system to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 13, 2008.

/s/ *Tami Lyn Azorsky*
Tami Lyn Azorsky (admitted *pro hac vice*)
tazorsky@mckennalong.com

Dated: August 13, 2008

DC:50564634.1